## SHEPHERD v. NEWKIRK.

1. Account rendered in Orphans' Court by guardian of lunatic, admitting balance "consisting of *securities*, interest, cash, &c." and decree thereon. In action for money had and received against such guardian, the decree is conclusive evidence of the amount in defendant's hands. Evidence therefore by the defendant to show the amount received from any given source, is immaterial.

2. On the restoration of the lunatic to his right mind, it is the duty of the guardian to restore the funds in his hands. If he fail so to do, it may be inferred that he has converted the securities in his hands to his own use, and he is liable in this form of action.

3. Securities received as money may be recovered as such. So the action may be supported, if sufficient time has elapsed and other circumstances exist to raise an inference, that what has been received has been converted into money.

4. A decree of the Orphans' Court approving of all loans previously made without specification, will not relieve a guardian from personal responsibility. The statute (*Rev. Laws* 779 § 11) only applies to future investments to be made upon securities to be submitted to, and approved by the court.

5. The defendant having acted as guardian, and accounted in that capacity, in this action cannot deny that he was lawfully appointed.

6. *Semble.* That the proceedings in lunacy having been transmitted from the Court of Chancery to the Orphans' Court, recording is not essential in order to give the Orphans' Court jurisdiction.

7. The guardianship bond is collateral merely, and does not preclude the remedy against the guardian himself.

Assumpsit by George Shepherd, late a lunatic, but whose commission of lunacy had been superseded, against John M. Newkirk, surviving guardian of said lunatic. Shepherd the plaintiff having died, the action had been revived in the name of Catharine Shepherd, the executrix. The declaration contained three counts : one, the usual money count for money had and received ; the second, for interest ; and the third on an account stated.

This cause was tried at the Hudson Circuit, August 1845, before the late Chief Justice. On the trial, the plaintiff read in evidence the proceedings in Chancery in relation to the lunacy of Shepherd ; commission, &c. ; confirmation dated 29th

January, 1814, &c. Also, proceedings in Bergen Orphans' Court thereon; appointment of guardians, &c. Also, the supersedeas of the commission of lunacy, and the proceedings in the Orphans' Court of the County of Hudson, whereby the defendant, the surviving guardian, was cited to account, and upon final settlement, a balance found in his hands. The final account of the defendant, and the decree of the said Orphans' Court of the county of Hudson, "as well of, and for so much of the personal estate of the said G. S.," &c. "and of the proceeds of the real estate sold," &c. charged the accountant a balance in his hands "consisting of *securities,* interest due, and cash," of $3,494.22. This account of the defendant, charging him with this balance, sworn to by the accountant, no exceptions having been made, was finally passed by the Orphans' Court on the 10th August, 1841, and the said balance ordered to be paid by him to the said George Shepherd. Objections were made in the progress of the cause to the evidence of the plaintiff.

The plaintiff having rested, and the court refusing to nonsuit, the defendant offered in evidence an inventory of the estate of the lunatic, dated ————————, filed in the Bergen Orphans' Court, together with other proceedings in said court. The inventory showed the estate to consist of real estate, goods and chattels, &c., bonds, mortgages, promissory notes, books of account, and a negro slave, &c. Also, an order of said Orphans' Court, dated 7th October, 1832, in relation to the estate of said lunatic, which "ordered that the balance remaining in the hands of the said guardian, amounting to $3,010.72, consisting of bonds, mortgages, notes and interest due, be kept out at interest by the said guardian, and the payment thereof secured by bond and mortgage, or such personal security as the said guardian shall in his wisdom, &c. have considered to be safe." It further ordered, if it had been so invested, the guardian should not be responsible for any loss.

The defendant further offered in evidence a certified copy of the order of the Orphans' Court of the county of Morris, shewing a sale of lands in that county, dated 4th May, 1815, which the court overruled.

It further appeared by a receipt read in evidence by the defendant, dated 22d July, 1841, and by admissions made on the trial, that notes and securities had been assigned by the defendant to the plaintiff, to the amount of $1,831.90, in part payment of the account.

The Chief Justice directed a verdict for the plaintiff for the whole balance stated on settlement in Orphans' Court (deducting the amount of notes, &c. assigned) with interest, reserving the questions of law raised upon the trial. The jury found a verdict for the plaintiff for $2,069.26. The defendant obtained a rule to shew cause why the verdict should not be set aside. The grounds relied upon will appear in the reasons assigned.

*J. D. Miller*, for defendant in support of the rule.

Argued before Justices WHITEHEAD, CARPENTER and RANDOLPH.

I. The court allowed the plaintiff to give in evidence a certified copy of the record of proceedings in the Orphans' Court of Bergen county, dated July 16, 1814, in relation to the lunacy of the plaintiff, without shewing that any proceedings of the Court of Chancery had been *recorded and filed* in the Surrogate's office of said county of Bergen, according to law. *Elm. Dig.* 237; *Rev. Laws* 696.

The recording alone gives jurisdiction to the Orphans' Court to appoint a guardian and take other proceedings.

II. The court admitted in evidence as proof of money had and received, &c. the final account and other proceedings in the Orphans' Court of the county of Hudson, of John M. Newkirk as guardian of George Shepherd, when such account and proceeding merely stated the "amount of balance in accountant's hands, consisting of *securities, interest due*, and *cash* "—without specifying the securities or the nature thereof, or how much interest, and how the same accrued, &c.; whether the same was separate and distinct from said securities; or how much cash, and when, and from whom received, although a bill of the particulars of the demand, &c. had been duly required. Now, it

clearly appears from the inventory and accounts of the accountant (the defendant), that these securities consisted of bonds and mortgages, and promissory notes; and it further appears from the inventory, that a part also consisted of real estate in the county of Morris as well as of Bergen.

An action for money had and received cannot be supported, unless the defendant has in fact received money. *Beardsley* v. *Root*, 11 *John. R.* 464 ; *Dorblu* v. *Fisher, S. & R.* 179 ; *Willis* v. *Crooker*, 1 *Pick.* 204.

III. The plaintiff had a remedy of a higher nature for the recovery of the property received by the defendant in his capacity as guardian, viz : a bond with surety for the faithful discharge of his duty as guardian. 1 *Chit. Pl. (7th Am. Ed.)* 117 ; 1 *Saund. Pl. & Ev.* 110.

IV. The defendant was not personally liable for the securities belonging to the estate of plaintiff, which had been taken by the leave and direction, or had received the sanction of the Orphans' Court. *Rev. L.* 779 § 11 ; *Elm. Dig.* 361.

V. The court refused to admit in evidence a certified copy of the proceedings of the Orphans' Court of Morris, shewing sales of lands belonging to the estate, and the amount realized from these sales.

*Mr. Vroom*, for plaintiff, contra.

I. It was not material to shew that the proceedings in Chancery had been recorded. They had been regularly transmitted according to the act by the Chancellor to the Orphans' Court of Bergen. This appears on the face of the order appointing the guardians, and it was sufficient. Recording was not essential to give jurisdiction. But the defendant having *acted* as guardian, cannot deny in a collateral way, that he was lawfully appointed.

II. In regard to the second reason, the court held upon demurrer, that the action at common law could not be maintained on the adjudication of the Orphans' Court. 1 *Spencer* 343.

The plaintiff then proceeds on the common counts, and the account as stated and settled in the Orphans' Court, is evidence of indebtedness to the amount of it. The decree is, " that

there is in the hands of the said J. M. Newkirk, late guardian as aforesaid, to be paid to the said George Shepherd, the sum of $3,494.22."

When an executor, administrator or guardian admits such balance in his hands, and refuses to pay or make satisfaction, he becomes personally liable   In most cases, the balance consists partly of securities, and partly of money ; but when the account is settled in full, and no allowance prayed for bonds or other choses in action uncollected, it is considered as an assumption of the whole, and equivalent to promises to pay in money.   If a thing be received as money, it may be treated as such in an action for money had and received.   *Spratt* v. *Hobhouse*, 4 *Bing*. 173.

It appears, it is true, by the inventory, that a part of the property was originally real estate ; but the accounts show that this has been sold and converted into personalty, and formed a part of the account.

The declaration also contains a count on an account stated. Under such a count a promissory note is evidence.   2 *Stark. Ev.* 95.   The count is maintainable, even though the items are secured by a specialty.   *Moravia* v. *Levy*, 2 *T. R.* 483, *in note*.

The account was settled in July 1841.   If the defendant held these securities *in specie* for the plaintiff, he should have passed them over.   This he refuses to do ; and more than a year after the account settled, the plaintiff is obliged to resort to a suit to recover the amount due.

He could not have brought trover.   The bonds and securities were not specified in the account.

III. The answer to the third reason, that the party had a remedy of a higher nature, is : the giving a guardianship bond does not preclude the ordinary course of proceeding by suit against the guardian, any more than the giving a sheriff's bond affects the right to proceed personally against the sheriff by amercement or otherwise.

IV. The fourth reason is, party is protected by the order of the Orphans' Court.   Such order was entirely void.   *Gray* v. *Fox*, *Saxton's Rep.* 271.   If valid, it was only to protect him against *loss*.   No loss is here pretended.

If valid, the defendant should have tendered the securities then taken, and pleaded it as a defence.

V. The record of the proceedings of Orphans' Court of Morris was not evidence. It could not have altered the face of the account, or changed the defendant's liability.

The opinion of the court was delivered by

CARPENTER, J. Most of the reasons urged on the behalf of the defendant present no difficulty, and may be disposed of in few words upon the answers given by the counsel of the plaintiff. We do not suppose that the jurisdiction of the Orphans' Court rested upon the recording of the proceedings in lunacy transmitted from the Court of Chancery. However this may be, the defendant, having taken upon himself the duty of guardian, having acted as guardian and accounted in that capacity, cannot, in this collateral way, deny that he was lawfully appointed. The objection therefore becomes immaterial.

The guardianship bond given by the defendant was simply by way of collateral security, and does not preclude the plaintiff from any other remedy against the defendant to which he might otherwise be entitled. This is so obvious as not to require further remark.

The judgment heretofore delivered by the court in this cause, very clearly points out the nature and effect of the decree of the Orphans' Court on final settlement, as regards the liability of the defendant and the remedy of the plaintiff. The Orphans' Court being simply a court of account, "the decree itself"— says the opinion referred to—"created no legal liability, but only ascertained the extent or measure of a previously existing liability. It was the defendant's duty to pay over to the plaintiff all the money in his hands, when the plaintiff (in the language of the act) came to his right mind, and the commission of lunacy was superceded. The legal obligation then attached." Again; after stating that the plaintiff had an easy remedy, and was not obliged to resort to the bond: "The plaintiff's remedy was to declare upon the original indebtedness, for money had and received; and the decree of the Orphans' Court, unless

modified or appealed from, would be conclusive evidence of the amount in the defendant's hands." *Spenc. R.* 346, 347.

But the chief objection urged is, that the evidence does not show a money indebtedness, such as will sustain the plaintiff's declaration ; the account settled in the Orphans' Court, setting forth a " balance in accountant's hands consisting of *securities interest due, cash,*" &c. : that to support an action for money had and received, money must in fact have been received by the defendant to the use of the plaintiff. It is true, that in an action for money had and received, the consideration must be money, and yet anything may form the subject matter of this action, if it have been treated as money : if received as money it may be recovered as such. So also the action may be supported if sufficient time has elapsed, and other circumstances exist to raise an inference that what has been received, has been converted into money.

The inventory filed, shows the estate to have consisted of real estate, goods and chattels, choses in action, &c. It was the duty of the guardian to collect the personalty—which we may presume that he did—and securely invest it for the purposes of income, and for the support of the lunatic. The account, upon which the balance acknowledged to be in the defendant's hands accrues, contains no items of real estate, nor of personal property *in specie*. The real estate (at any rate, some real estate) appears from the account to have been converted into cash (or securities received as cash) the proceeds of sales made by the defendant. The account purports to be of personal property, and of " the proceeds of real estate sold, &c."

At the term of October, 1832, the Orphans' Court of the county of Bergen, in relation to the estate of the plaintiff, ordered, that the balance remaining in the hands of the guardian, amounting to $3,010.72, consisting of bonds and mortgages, notes and interest due, should be kept out at interest, secured by bond or mortgage, or such personal security as the guardian in his wisdom should consider safe ; and if so invested, the order further declared he should not be held personally responsible in case of loss. Guardians and other trustees are required to invest upon due security (and probably nothing short of

landed security would be sanctioned in this state); when, if in good faith, and with proper caution and diligence, they will not be held responsible for unavoidable loss, by the court before which they are required to account. But the law of this State further provides for their security. They may place money at interest under the direction of the Orphans' Court, upon security such as the court shall allow at the risk of their *minors, &c.*, and if security so taken *bona fide*, shall prove insufficient, they are not to be held responsible. *Rev. Laws* 779, § 11. But it is future investments upon securities to be submitted to and approved by the court, to which the statute applies, and a decree of confirmation by the court of a loan previously made, and of the security taken, has been held to be entirely unauthorized and of no avail. *Gray* v. *Fox, Saxton* 271. This order goes much further than the order made in that case. It applies to all loans, without specification, previously made by the defendant upon such security, either landed or personal, he in his discretion considered safe. Indeed, the terms of the order seem to reach all future investments on similar security, which the defendant might afterwards see fit to make. Such order, even if the statute applies to guardians of idiots and lunatics, was entirely unauthorized, and may be laid entirely out of the question in considering the liability of the defendant in the present action. If the guardian in good faith, and with proper caution, had taken securities of a character sanctioned by law, and such securities had become unavailing, he should have applied to the Orphans' Court, on the settlement of his account, for allowance. In the absence of any such application, it may properly be presumed that no loss has occurred. If on the restoration of the lunatic to his right mind, when called upon to surrender his trust and to restore the funds to the plaintiff, he fails to do so, it may properly be inferred that he has converted to his own use the money which had been invested for the benefit of his ward, and in such case he is undoubtedly responsible in this form of action. Having received money, or its equivalent, he is bound to account for it. If in his hands in the shape of securities such as he was authorized to receive as investments, to

discharge himself at the least, he should shew that they were of such character, and that he had produced and tendered them to the plaintiff. I think, therefore, the action can well be maintained under the evidence upon the common counts in the plaintiff's declaration.

The proceedings in the Orphans' Court of Morris were properly overruled. It is evident that they could in no way have lessened or altered the liability of the defendant, the extent of which had been conclusively ascertained by the decree on final settlement.

Rule discharged.